**CANDIS MITCHELL**
California Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Candis_Mitchell@fd.org

Attorneys for Mr. Arvin Espinoza-Morales

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| UNITED STATES OF AMERICA, | ) | CASE NO.: 08CR1271-IEG |
|---|---|---|
| Plaintiff, | ) | DATE: JUNE 2, 2008 |
| | ) | TIME: 2:00 P.M. |
| v. | ) | |
| **ARVIN ESPINOZA-MORALES**, | ) | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendant. | ) | |

**I.**

**STATEMENT OF FACTS[1]**

**A.  Arrest**

On March 4, 2008, Border Patrol Agent Gerald Powers responded to a report made by a Remote Video Surveillance System Operator that they observed someone scaling the International Border Fence at 8:14 p.m. 3.5 miles east of the Calexico, California Port of Entry. Following his response, he approached and identified himself to Mr. Espinoza-Morales who is alleged to have made statement admitting that he was a citizen and national of Mexico without proper documentation or permission to enter the United States. Mr. Espinoz-Morales was arrested and transported to the Calexico Border Patrol Station

---

[1]. The following is based primarily upon information supplied through Government discovery. Mr. Espinoza-Morales does not stipulate to its accuracy and reserves the right to challenge it at future proceedings.

**B.    Interrogation**

Following his arrest, Mr. Espinoza-Morales was questioned three times regarding his alienage and status for entry into the United States. The first interview came at an unknown time upon arrival at the Border Patrol Station after he was provided with a Request for Disposition Form. Mr. Espinoza-Morales allegedly made statements regarding his citizenship and how he entered the United States. Following the first questioning, at 11:10 p.m., he was allegedly advised of his rights pursuant to <u>Miranda</u> and waived his rights. He indicated that he was a citizen of Nicaragua without permission to reenter the United States. Based on the information at had, Mr. Espinoza-Morales was initially processed for a reinstatement of a previous removal order, but was returned to the Calexico Border Patrol Station on April 1, 2008, for initiation of criminal proceedings. At 6:35 p.m., he was Mirandized again and waived his rights. He made statements as to not having permission to reenter the United States and being a citizen of Nicaragua.

**C.    Indictment**

On April 23, 2008, an indictment was handed down charging Mr. Espinoza-Morales with violating 8 U.S.C. §1326 (a) and (b), deported alien attempting to enter the United States who had been removed subsequent to November 22, 2004.

These motions follow.

**II.**

**MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

Mr. Espinoza-Morales moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." <u>See</u> <u>United States v. Bryan</u>, 868 F.2d 1032 (9th Cir. 1989).

Mr. Espinoza-Morales respectfully requests that the Government be ordered to produce discovery because Mr. Espinoza-Morales has reason to believe that he has not received all the discoverable material in his case. Mr. Espinoza-Morales **specifically requests production of a copy of the taped proceedings and any and all documents memorializing the deportation proceeding allegedly held subsequent to November 22, 2004, and any other proceedings that the Government intends to rely upon at trial**. This request includes discovery of materials known to the Government attorney, as well as discovery of materials

which the Government attorney may become aware of through the exercise of due diligence. See FED. R. CRIM. P. 16.

Mr. Espinoza-Morales additionally requests that the Court order the Government to allow him the opportunity to review his A-file in its entirety. First, the A-file contains documentation concerning his alleged deportation. Part of Mr. Espinoza-Morales defense may be that his underlying deportation was invalid. Second, the Government will likely try to show at trial that a government officer searched the A-file and did not find an application by Mr. Espinoza-Morales for permission to enter the United States. Mr. Espinoza-Morales should be able to review his A-file in order to see whether any application for lawful admission exists. Moreover, Mr. Espinoza-Morales should also be able to verify whether other documents that would ordinarily be in the A-file are "non-existent," or otherwise missing from his A-file. Mr. Espinoza-Morales may assert a defense that his application for lawful entry was lost or otherwise misplaced by the Government. He must be allowed the opportunity to review his A-file and the manner in which it is being maintained by the Government in order to present this defense. **A proposed order is attached for the court's convenience.**

In addition, Mr. Espinoza-Morales moves for the production of the following discovery:

1. **Mr. Espinoza-Morales's Statements.** The Government must disclose to Mr. Espinoza-Morales all copies of any written or recorded statements made by Mr. Espinoza-Morales; the substance of any statements made by Mr. Espinoza-Morales which the Government intends to offer in evidence at trial; any response by Mr. Espinoza-Morales to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of Mr. Espinoza-Morales's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to Mr. Espinoza-Morales; as well as any other statements attributed to Mr. Espinoza-Morales. FED. R. CRIM. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all Mr. Espinoza-Morales's statements, whether written or oral, regardless of whether the Government intends to make any use of those statements. **Mr. Espinoza-Morales specifically requests all audio and videotaped copies of his statements and any rough notes taken pertaining to the substance of his statements.**

2. **Arrest Reports, Notes and Dispatch Tapes.** Mr. Espinoza-Morales also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Espinoza-Morales or any other discoverable material is contained. Such material is discoverable under FED. R. CRIM. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Espinoza-Morales. See FED. R. CRIM. P. 16(a)(1)(B) and (c), FED. R. CRIM. P. 26.2 and 12(i).

3. **Brady Material**. Mr. Espinoza-Morales requests all documents, statements, agents' reports, and tangible evidence favorable to Mr. Espinoza-Morales on the issue of guilt and/or which affects the credibility of the Government's witnesses and the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

4. **Any Information That May Result in a Lower Sentence Under The Guidelines.** Notwithstanding the advisory nature of the sentencing guidelines, the Government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963), because it is exculpatory and/or mitigating evidence relevant to a possible future determination with respect to sentencing.

5. **Mr. Espinoza-Morales's Prior Record.** Mr. Espinoza-Morales requests disclosure of his prior record. FED. R. CRIM. P. 16(a)(1)(B).

6. **Any Proposed 404(b) Evidence.** Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

1    The defendant requests that such notice be given three weeks before trial to give the defense time to adequately investigate and prepare for trial.

7. **Evidence Seized.** Mr. Espinoza-Morales requests production of evidence seized as a result of any search, either warrantless or with a warrant. FED. R. CRIM. P. 16(a)(1)(c).

8. **Request for Preservation of Evidence.** Mr. Espinoza-Morales specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Espinoza-Morales's personal effects, and any evidence seized from Mr. Espinoza-Morales.

9. **Henthorn Material.** Mr. Espinoza-Morales requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 419 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate Government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord).

10. **Tangible Objects.** Mr. Espinoza-Morales requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the Government's case-in-chief, or were obtained from or belong to Mr. Espinoza-Morales. FED. R. CRIM. P. 16(a)(1)(c). **Specifically, Mr. Espinoza-Morales requests copies of the audio tapes of his alleged prior deportations or removals.**

11. **Expert Witnesses.** Mr. Espinoza-Morales requests the name, qualifications, and a written summary of the testimony of any person that the Government intends to call as an expert witness during its case in chief. FED. R. CRIM. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to

this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. **Evidence of Bias or Motive to Lie.** Mr. Espinoza-Morales requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Espinoza-Morales, or has a motive to falsify or distort his or her testimony.

13. **Impeachment Evidence.** Mr. Espinoza-Morales requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Espinoza-Morales. See FED. R. EVID. 608, 609 and 613; Brady v. Maryland.

14. **Evidence of Criminal Investigation of Any Government Witness.** Mr. Espinoza-Morales requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

15. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.** Mr. Espinoza-Morales requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

16. **Witness Addresses.** Mr. Espinoza-Morales requests the name and last known address of each prospective Government witness. Mr. Espinoza-Morales also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

17. **Name of Witnesses Favorable to Mr. Espinoza-Morales.** Mr. Espinoza-Morales requests the name of any witness who made an arguably favorable statement concerning Mr. Espinoza-Morales or who could not identify him or who was unsure of his identity, or participation in the crime charged.

18. **Statements Relevant to the Defense.** Mr. Espinoza-Morales requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

19. **Jencks Act Material.** Mr. Espinoza-Morales requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Espinoza-Morales to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

20. **Giglio Information & Agreements Between the Government and Witnesses.** Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Espinoza-Morales requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

21. **Agreements Between the Government and Witnesses.** Mr. Espinoza-Morales requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

22. **Informants and Cooperating Witnesses.** Mr. Espinoza-Morales requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated

1  in the crime charged against Mr. Espinoza-Morales. The Government must disclose the informant's identity

2  and location, as well as the existence of any other percipient witness unknown or unknowable to the defense.

3  Roviaro v. United States, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information

4  derived from informants which exculpates or tends to exculpate Mr. Espinoza-Morales. Brady v. Maryland,

5  373 U.S. 83 (1963)

6        23.  **Bias by Informants or Cooperating Witnesses.**  Mr. Espinoza-Morales requests disclosure

7  of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United

8  States, 405 U.S. 150 (1972).  Such information includes, but is not limited to, any inducements, favors,

9  payments or threats that were made to the witness in order to secure cooperation with the authorities.

10       24. **Scientific and Other Information.**  Mr. Espinoza-Morales requests the results of any scientific

11 or other tests or examinations conducted by any Government agency or their subcontractors in connection

12 with this case. See Rule 16(a)(1)(D).

13       25. **Residual Request.**  Mr. Espinoza-Morales intends by this discovery motion to invoke his rights

14 to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the

15 Constitution and laws of the United States. Mr. Espinoza-Morales requests that the Government provide

16 him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary

17 delay prior to cross-examination.

**III.**

**THIS COURT SHOULD DISMISS THE INDICTMENT FOR ITS FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE**

21       Mr. Espinoza-Morales has been charged with attempted entry, a violation of Title 8 U.S.C. § 1326.

22 The indictment fails to state an offense, since it does not allege that Mr. Espinoza-Morales committed an

23 overt act -- a required element in "attempt" cases. See United States v. Gracidas-Ulibarry, 231 F.3d 1188,

24 1196 (9th Cir. 2000) (en banc). The Fifth Amendment provides that "[n]o person shall be held to answer

25 for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S.

26 Const. Amend. V.  An indictment's failure to "recite an essential element of the charged offense is not a

27 minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." United States v. Du Bo,

28

186 F.3d 1177, 1179 (9th Cir. 1999); see also, United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001).

A. **The Indictment Fails to State an Offense, Since it Does Not Allege That Mr. Espinoza-Morales Committed an Overt Act**

The purpose of an overt act element, in an attempt indictment, is to protect the innocent, by showing that the prohibited actions must be more than just thought or "mere preparation." See Rollin M. Perkins & Ronald N. Boyce, Criminal Law § 3.A.7, at 637 (3d ed. 1982). The Ninth Circuit has held that "failure to allege any specific overt act that is a substantial step toward entry is a fatal defect in an indictment for attempted entry following deportation under 8 U.S.C. §1326." United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005). Without alleging an overt act the indictment in this case fails to allege an essential element, and in doing so it fails to state an offense. This is a fatal flaw, and dismissal of the indictment is required. Du Bo, 186 F.3d at 1179

1. *The Commission of an Overt Act Is a Required Element in "Attempt Crimes"*

An overt act is required to protect the innocent from conviction for merely thinking about committing a crime. "The common law meaning of 'attempt' is the specific intent to 'engage in criminal conduct and ... an overt act which is a substantial step towards committing the crime.'" Gracidas-Ulibarry, 231 F.3d at 1192, citing United States v. Arbelaez, 812 F.2d 530, 534 (9th Cir.1987); accord United States v. Bailey, 444 U.S. 394, 405 (1980); Wooldridge v. United States, 237 F. 775, 778-79 (9th Cir.1916) (collecting common law sources "holding that, to constitute an attempt, there must be the intent to commit a crime and some act done toward its consummation, and that the term 'attempt' signifies both an act and the intent with which it is done"); 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2, at 18 (1986) ("The crime of attempt . . . [at] common law . . . consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation.").

The Ninth Circuit en banc has adopted the common-law definition of attempt and has held that "the elements of the crime of attempted illegal reentry into the United States under 8 U.S.C. § 1326 are: (1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) *the defendant committed an overt act that was a substantial step towards*

*reentering without that consent*; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry." Gracidas-Ulibarry, 231 F.3d at 1196 (emphasis added).

    **2.   *The Indictment Must Be Dismissed Because It Does Not Allege an Overt Act That Was a Substantial Step Which Corroborates the Mens Rea of the Charged Offense.***

In an attempt to comply with Resendiz-Ponce, the indictment alleges that Mr. Espinoza-Morales "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense."

However, merely stating that a particular act is a substantial step, however, does not satisfy the Ninth Circuit's description of that element. The "purpose of [the] substantial step requirement in attempt crimes is to corroborate the actor's specific intent to commit the crime." Walters v. Maass, 45 F.3d 1355, 1349 (9th Cir. 1995) (citing United States v. Plenty Arrows, 946 F.2d 62, 66 (8th Cir. 1991)). Thus, the government must allege and prove "culpable intent and conduct constituting a substantial step toward commission of the crime that strongly corroborates that intent." United States v. DeRosa, 670 F.2d 889, 894 (9th Cir. 1982) (citing United States v. Snell, 627 F.2d 186, 187 (9th Cir. 1980)). The language employed in the indictment's substantial step allegation makes no reference to *mens rea* at all. Instead, it simply charges that Mr. Espinoza-Morales "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense." The grand jury thus did not find, nor was it asked to find, "a substantial step toward commission of the crime *that strongly corroborates [the requisite] intent*." See DeRosa, 670 F.2d at 894. The indictment therefore fails to state an offense against the United States.

Because "[f]ailure to allege an essential element of the offense is a fatal flaw not subject to mere harmless error analysis[,]" the Ninth Circuit "reverse[d] the judgment against Resendiz and direct[ed] the district court to dismiss the indictment without prejudice to reindict[]." Resendiz-Ponce, 425 F.3d at 732-33 (citing United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999)). Accord United States v. Pernillo-Fuentes, 252 F.3d 1030, 1032 (9th Cir. 2001) (the remedy for the failure to allege an element of a section

1326 offense is dismissal). Accordingly, the instant indictment must likewise be dismissed because it fails to allege all essential elements of the offense of an attempted entry, in violation of 8 U.S.C. § 1326.

### B. The Indictment must Be Dismissed Because If Fails to Set out Both the Date of a Prior Felony Conviction and Specific Date of Prior Removal from the United States

Additionally, Mr. Espinoza-Morales argues that the indictment must be dismissed because it fails to allege in the indictment, in contravention to United States v. Salazar-Lopez, 506 F.3d 748 (9th Cir. 2007), *both* the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction. The indictment here is insufficient because it only alleges that Mr. Espinoza-Morales was removed from the United States subsequent to one unassociated date, November 22, 2004. It does not specifically provide the date of a previous removal nor the date of any alleged previous felony conviction. Since the indictment fatally fails to allege all of the necessary elements of the offense, it must be dismissed. See Du Bo, 186 F.3d at 1179.

### IV.

### THE INDICTMENT SHOULD BE DISMISSED BECAUSE JUDGE BURNS'S INSTRUCTIONS AS A WHOLE PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS* AND VIOLATE THE FIFTH AMENDMENT BY DEPRIVING MR. ESPINOZA-MORALES OF THE TRADITIONAL FUNCTIONING OF THE GRAND JURY

The indictment in the instant case was returned by the January 2007 grand jury. See CR at 6.[2] That grand jury was instructed by Judge Burns on January 11, 2007. See Reporter's Partial Transcript of the Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit A. This Court's instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[3] These instructions compounded this Court's erroneous instructions and comments to prospective grand jurors during voir dire of the grand jury panel, which immediately preceded the instructions at Ex. A. See

---

[2] "CR" refers to the Clerk's Record in Case Number 08CR1271-IEG.

[3] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).

1  Reporter's Transcript of Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit
2  B.. The indictment should be dismissed because the grand jurors were first instructed that their singular duty
3  was to determine whether or not probable cause exists and that they had no right to decline to indict when
4  the probable cause standard is satisfied. Second, grand jurors were instructed of a non-existent prosecutorial
5  duty to present exculpatory evidence.

6  Mr. Espinoza-Morales's arguments are essentially those set out in Judge Hawkins' dissent in United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), cert. denied, 1538 U.S. 934 (2003), Judge Kozinski's dissent in United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004), opinion vacated by United States v. Navarro-Vargas, 367 F.3d 920 (9th Cir. 2004), and Judge Hawkins' dissent in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) cert. denied, Navarro-Vargas v. United States, 546 U.S. 1036 (2005). Mr. Espinoza-Morales incorporates those arguments by reference. However, if the Court would like further briefing on this issue, Mr. Espinoza-Morales is happy to provide it.

### V.

### MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Espinoza-Morales hereby moves this Court to compel the government to produce all grand jury transcripts in this case. See U.S. Const. Amends V & VI[4]. Fed. R. Crim. Pro. 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Given the fact that it appears that the government

---

[4] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956). Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976). In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government. It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed. Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation. He is only called to read a report which has been prepared by others. Such a practice does not allow for the considered judgment of grand jurors. Thus, the release of transcripts is appropriate.

did not have any immigration documents establishing a deportation "subsequent to November 22, 2004",[5] at the time it presented this case to the grand jury, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii). Mr. Espinoza-Morales requests the Court "authorize disclosure" of the grand jury transcript to allow Mr. Espinoza-Morales to adequately prepare for trial and to perfect his appellate record. See id.

## VI.

## MOTION TO SUPPRESS STATEMENTS

Mr. Espinoza-Morales moves to suppress his statements on the grounds of an invalid Miranda waiver and voluntariness. In the case before the court, there appears to be three statements made by Mr. Espinoza-Morales -- one at an undetermined time on March 4, 2008, one at 11:10 p.m. on March 4, 2008, and the last on 6:35 p.m. on April 1, 2008. Documents establishing valid recitations and subsequent waivers of Miranda rights were not submitted for any of the statements.

**A.    The Government Must Demonstrate Compliance with *Miranda*.**

In order for any statements made by Mr. Espinoza-Morales to be admissible against him, the government must demonstrate that they were obtained in compliance with the Miranda decision. The government must establish that Mr. Espinoza-Morales's waiver of his Miranda rights was voluntary, knowing, and intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973). When interrogation continues without the presence of an attorney, and a statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and voluntarily waived his privilege against self-incrimination. Miranda, 384 U.S. at 475. The court must indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the government is great. United States v. Heldt, 745 F. 2d 1275, 1277 (9th Cir. 1984).

In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality of the circumstances surrounding the case. Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Garibay, 143 F.3d 534 (9th Cir. 1998). The Ninth Circuit has held that determination of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and

---

[5] Mr. Espinoza-Morales has not been provided with any deportation documents establishing a deportation "subsequent to November 22, 2004" as was alleged to have occurred in the indictment.

intelligent. Derrick v. Peterson, 924 F. 2d 813 (9th Cir. 1990). The second prong requires an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-821 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). Not only must the waiver be uncoerced, then, it must also involve a "requisite level of comprehension" before a court may conclude that Miranda rights have been legitimately waived. Id. (quoting Colorado v. Spring, 479 U.S. at 573). Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used against the defendant. Miranda, 384 U.S. at 479. The government in this case must prove that Mr. Espinoza-Morales waived his rights intelligently and voluntarily. Mr. Espinoza-Morales disputes any allegation any waiver was knowing, intelligent, and voluntarily.

**B.    Mr. Espinoza-Morales's Statements Must Be Voluntary.**

Even if this Court determines that Mr. Espinoza-Morales validly waived his Miranda rights, it must still make a determination that any statements are voluntary. Under 18 U.S.C. § 3501(a), this Court is required to determine, whether any statements made by Mr. Espinoza-Morales are voluntary. In addition, section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Espinoza-Morales understood the nature of the charges against him and whether he understood his rights. Without such evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

   **1.   *The Statements Made on April 1, 2008 must be Suppressed as Involuntary as Being Obtained Outside the Safe-Harbor Period and Because Mr. Espinoza-Morales Was Not Arraigned Without Unnecessary Delay.***

Mr. Espinoza-Morales's post-arrest statements must be suppressed because they were taken more than 28 days after his arrest and the government failed to arraign him without unnecessary delay as required under Fed. R. Crim. P. 5(a)(1)(A).

Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer . . . ." Fed. R. Crim. P. 5(a)(1)(A). The "[p]rovisions related to Rule 5(a) contemplate a procedure that allows arresting officers little more leeway than the interval between arrest and the ordinary administrative steps required to bring a suspect before the nearest magistrate." Mallory v. United States, 354 U.S. 449, 453 (1957). The police must "arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined." Id. at 454. The arrested person may be booked, "[b]ut he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt." Id.

"If a United States magistrate is not reasonably available under Rule 5(a), the arrested person shall be brought before a state or local judicial officer . . . and such officer shall inform the person of the rights specified in rule 5(c) and shall authorize the release of the arrested person . . ." Fed. R. Crim. P. 5, Advisory Committee Notes, 1972 Amendment. The language of this provision "reflects the view that time is of the essence." See Fed. R. Crim. P. 5, Advisory Committee Notes, 2002 Amendments.

"Legislation such as this requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard--not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society." Mallory, 354 U.S. at 452 (quoting McNabb v. United States, 318 U.S. 332, 342-44 (1943)). In order adequately to enforce the requirement of prompt arraignment, it is necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention. Id. at 453.

In Mallory, for example, the Supreme Court found that "the circumstances of [the] case preclude a holding that arraignment was without unnecessary delay." Id. at 455. There, the defendant was arrested in the early afternoon, interrogated for approximately a half-hour, detained for an additional four hours, and interrogated again. Id. The defendant was not arraigned until the next morning. Id. at 451. In finding the statements inadmissible due to the unnecessary delay in arraignment, the Supreme Court emphasized that "[i]t is not the function of the police to arrest, as it were, at large and to use an interrogating process at police

1  headquarters in order to determine whom they should charge before a committing magistrate . . . ." Id. at
2  456.
3      Pursuant to 18 U.S.C. § 3501(c), delay in presentment, beyond six hours, requires suppression of any
4  incriminating statements made thereafter. Section 3501(c) provides:

> In any criminal prosecution by the United States . . . a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit person charged with offenses against the laws of the United States . . . if such confession is found by the trial judge to have been voluntarily made and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention . . .

"The clear meaning of this provision is that delay alone permits suppression when any of these requisites are not met." United States v. Perez, 733 F.2d 1026, 1031 (2d Cir. 1984). Thus, the Ninth Circuit has held that "there must be circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession." United States v. Alvarez-Sanchez, 975 F.2d 1396, 1401 (9th Cir. 1992), overruled on other grounds, 511 U.S. 350 (1994) (holding that the exclusionary rule—due to delay in arraignment—does not apply where the person is detained solely on state charges). See also Perez, 733 F.2d at 1031 ("[§] 3501 leaves the *McNabb-Mallory* rule intact with regard to confessions obtained after a six hour delay"); United States v. Robinson, 439 F.2d 553, 563-64 (same).

Delay in interrogating a defendant "can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours." United States v. Manuel, 706 F.2d 908, 913 (9th Cir. 1983). In United States v. Wilson, the Ninth Circuit stated that "the fact that unreasonable delay, alone, beyond six hours may support a finding of involuntariness suggests that unreasonable delay is the most important factor of all [in the 3501 analysis]." 838 F.2d 1081, 1085 (9th Cir. 1988). Wilson further explains "if unreasonable delay in excess of six hours can itself form the basis for a finding of involuntariness, that same delay may also suggest involuntariness of the Miranda waiver." Id. at 1086. Finally, in Alvarez-Sanchez, 975 F.2d at 1400-01, the Ninth Circuit noted that while delay prior to obtaining a confession may be a basis for finding statements to be involuntary, pre-confession delay (as opposed to pre-arraignment delay) need not be unreasonable to warrant suppression.

Because statements made by Mr. Espinoza-Morales on April 1, 2008, were obtained nearly 30 days after his initial detention, this Court should find that any <u>Miranda</u> waiver and subsequent statements were involuntary, and thus, inadmissible. Further, because Mr. Espinoza-Morales's was not promptly arraigned before a magistrate judge or other state or local official, his statements must be additionally be suppressed.

## VII.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel has incomplete discovery at this time, and contemplates further motions. **Specifically, after viewing the a-file, Mr. Espinoza-Morales will be filing a motion attacking the validity of his alleged deportation**. Therefore, counsel requests leave to file additional motions once discovery is completed.

## VIII.

## CONCLUSION

For the foregoing reasons, Mr. Espinoza-Morales respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: May 19, 2008

*s/ Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Espinoza-Morales
Candis_Mitchell@fd.org