1  KAREN P. HEWITT
   United States Attorney
2  CAROLINE P. HAN
   Assistant U.S. Attorney
3  California State Bar No. 250301
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-5220
   Fax: (619) 235-2757
6  E-mail: caroline.han@usdoj.gov

7  Attorneys for Plaintiff
   United States of America
8
                    UNITED STATES DISTRICT COURT
9
                  SOUTHERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,        )   **Criminal Case No. 08CR1271-IEG**
                                     )
12                Plaintiff,         )   **RESPONSE AND OPPOSITION TO**
                                     )   **DEFENDANT'S MOTIONS:**
13          v.                       )
                                     )   **(1) TO COMPEL SPECIFIC DISCOVERY**
14                                   )   **(2) TO DISMISS INDICTMENT FOR FAILURE**
                                     )   **     TO ALLEGE ESSENTIAL ELEMENT OF**
15                                   )   **     OFFENSE**
    ARVIN ESPINOZA-MORALES           )   **(3) DISMISS INDICTMENT DUE TO**
16                                   )   **     IMPROPER  GRAND JURY INSTRUCTION**
                                     )   **(4) PRODUCE GRAND JURY TRANSCRIPT**
17                Defendant.         )   **(5) TO SUPPRESS STATEMENTS**
                                     )
18                                   )
                                     )
19                                   )   **Hon. Irma E. Gonzalez**
    _____    )   **June 2, 2008 at 2:00 pm**
20

21          COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

22  United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby

23  files its Response and Opposition to Defendant's Motions to Compel Specific Discovery, to

24  Dismiss Indictment for Failure to Allege Essential Element of the Offense, Dismiss Indictment Due

25  to Improper Grand Jury Instruction, Produce Grand Jury Transcript, and to Suppress Statements.

26  This Response and Opposition is based upon the files and records of this case, together with the

27  attached Statement of Facts, and Memorandum of Points and Authorities.

28

**I**

**STATEMENT OF FACTS**

    **A. <u>Statement of the Case</u>**

        On April 23, 2008, a federal grand jury handed up a one-count Indictment charging Defendant Arvin Espinoza-Morales with Attempted Entry after Deportation in violation of Title 8, United States Code, Section 1326. The indictment also alleges that Defendant was removed from the United States subsequent to November 22, 2004.  Defendant entered a not guilty plea before Magistrate Judge Peter C. Lewis on April 29, 2008.

    **B. <u>Statement of Facts</u>**

        **1. Defendant's Arrest**

        On March 4, 2008 at approximately 8:20 pm, United States Border Patrol (BP) Agent Gerald Powers responded to a location approximately 3 ½ miles east of the Calexico West Port of Entry after being informed by a Remote Video Surveillance System (RVSS) operator that he had seen a person climb over the international border fence.  BP Agent Powers found the defendant, and identified himself as a Border Patrol agent.  BP Agent Powers asked the defendant about his citizenship, and whether the defendant had legal right to enter or remain in the United States.  The defendant replied that he was Mexican citizen and stated that he did not have any immigration documents to allow him to enter or remain in the United States.  Thereafter, BP Agent Powers took the defendant into custody and transported him to the Calexico Border Patrol station.

        At the Calexico Border Patrol station, the defendant was fingerprinted and his information was entered into immigration databases.  Based on that, the defendant's identity and criminal history were confirmed, as well as that the defendant is a Mexican citizen with no legal documents to enter or remain in the United States.

        **2. Defendant's Statements**

        In addition to the statements described above, on March 4, 2008, the defendant made additional statements after being advised of his administrative rights.  The defendant agreed to waive his rights, and stated that he is a Mexican citizen who had entered the United States by climbing over the international border fence.  At approximately 11:10 pm, after the defendant's

1    fingerprints had confirmed that he had been deported by an immigration judge to Nicaragua, the

2    defendant was advised of his <u>Miranda</u> rights.  The defendant stated that he understood his rights,

3    and agreed to waive those rights.  The defendant stated that he was a citizen of Nicaragua, and

4    admitted that he had previously lied about being a citizen of Mexico.  The defendant also stated

5    that his hometown in Nicaragua was Corinto, and that it was located near a town called

6    Chinandenga.  The defendant also added that Luz Vida was the church in Corinto, and that Sana

7    Luisa Barquero was a school near Corinto.

8         The defendant also stated that he had been previously ordered removed from the United

9    States by an immigration judge, and that he had not requested permission from the Attorney

10   General or the Secretary of the Department of Homeland Security before re-entering the United

11   States.  The defendant also stated that he had intentionally entered the United States, and that he

12   had entered the United States to find work.  Finally, he also added that he had traveled from his

13   hometown, Corinto, to Guatemala and then on to Mexicali, and that it had taken him 10 days to

14   do so.  Thereafter, the defendant was administratively processed for a reinstatement  of his prior

15   removal order.  On March 6, 2008, the defendant was transported to an Immigration and Customs

16   Enforcement (ICE) detention facility located in Imperial County and held in civil detention

17   pending his removal back to Nicaragua.[1]

18        On April 1, 2008, the defendant was transported from the ICE facility to the Calexico

19   Border Patrol station, and was placed under arrest for the crime of Attempted Entry after

20   Deportation in violation of Title 8, United States Code, Section 1326.  At approximately 6:35 pm,

21   the defendant was advised of his <u>Miranda</u> rights, and he agreed to waive those rights.  BP Agent

22   Todd Huffaker then informed the defendant that he was being criminally prosecuted for the crime

23   of Attempted Entry after Deportation.  The defendant stated that his true name was Arvin

24   Espinoza-Morales, and that was a citizen of Nicaragua with no documentation that allowed him

25   to enter or remain in the United States. The defendant further stated that he walked into the United

---

[1]      According to an ICE representative at the detention facility, it takes
approximately 30 to 45 days to process and remove a person from the United
States if they are from a country other than Mexico.

States when he last entered the United States.  The defendant also added that he had previously been deported from the United States.  He also added that he had never received permission from the United States Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States.  He further added that he had entered the United States to visit his family.  The interview was concluded at approximately 6:47 pm.  Thereafter, the defendant was advised of his right to have the Nicaraguan consulate notified, and was later transported to the Imperial County Jail.

On April 2, 2008, the defendant was arraigned on a complaint charging him with Deported Alien Found in the United States in violation of 8 United States Code, Section 1326.

**C. Defendant's Criminal History**

On July 14, 1999, the defendant was convicted of a traffic violation in San Bernardino Municipal Court for which received a sentence of 2 days jail.

On October 12, 1999, the defendant was convicted of Sexual Penetration with a Foreign Object in violation of California Penal Code section 289 in San Bernardino Superior Court.  The defendant was sentenced to eight years in custody for that offense.

Finally, on November 22, 2004, the defendant was convicted of Battery Against a Peace Officer in violation of a California Penal Code section 242 in Fresno County Superior Court.  The defendant was subsequently sentenced to 180 days jail and 3 years probation.

**II**

**MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE**

The Government intends to continue full compliance with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal Rules of Criminal Procedure. To date, the Government has provided 52 pages of discovery as well as a DVD that includes the advisal of rights and the defendant's statement.  The Government anticipates that all discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1) Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

1    provide to Defendant the substance of Defendant's oral statements and Defendant's written

2    statements. The Government has produced all of the Defendant's statements that are known to the

3    undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or

4    written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such

5    statements will be provided to Defendant.  In addition, the United States objects to the defendant's

6    request for a certified transcript of the defendant's post-arrest statements.  Rule 16 does not require

7    the United States to do so, and there is no reason that has been specified for this request.  As such,

8    the request should be denied.

9         The Government has no objection to the preservation of the handwritten notes taken by any

10   of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents

11   must preserve their original notes of interviews of an accused or prospective government

12   witnesses).

13        However, the Government objects to providing Defendant with a copy of the rough notes

14   at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of

15   those notes have been accurately reflected in a type-written report. See United States v. Brown,

16   303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule

17   16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor

18   discrepancies" between the notes and a report). The Government is not required to produce rough

19   notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18

20   U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a

21   witness' assertion, and (2) have been approved or adopted by the witness. United States v.

22   Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute

23   "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035,

24   1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were

25   scattered and all the information contained in the notes was available in other forms). The notes

26   are not Brady material because the notes do not present any material exculpatory information, or

27   any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at

28   595-96 (rough notes were not Brady material because the notes were neither favorable to the

1    defense nor material to defendant's guilt or punishment); <u>United States</u> v. <u>Ramos</u>, 27 F.3d 65, 71

2    (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was

3    insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable

4    under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

5              **(2) Arrest reports, notes, dispatch tapes**

6              The Government has provided Defendant with all known reports related to Defendant's

7    arrest in this case that are available at this time. The Government will continue to comply with its

8    obligation to provide to Defendant all reports subject to Rule 16. As previously noted, the

9    Government has no objection to the preservation of the agents' handwritten notes, but objects to

10   providing Defendant with a copy of the rough notes at this time because the notes are not subject

11   to disclosure under Rule 16, the Jencks Act, or Brady. The United States is presently unaware of

12   any dispatch tapes relating to the Defendant's arrest in this case. In addition, the United States has

13   already discovered a copy of the Report of Investigation for the defendant's case.

14             **(3) A-File**

15             The United States does not object to setting up a viewing of the discoverable portion of the

16   defendant's A-file at a time that is mutually convenient for the parties. However, the United States

17   objects to providing the defendant with the entire A-file as the defendant has requested in his

18   motion because as the defendant is aware, the A-file contains attorney work product and other

19   information that is not discoverable information. This information is equally available to

20   Defendant through a Freedom of Information Act request. Even if Defendant could not ascertain

21   the A-File through such a request, the A-File is not Rule 16 discoverable information. The A-File

22   contains information that is not discoverable like internal government documents and witness

23   statements. See Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production

24   until after the witness for the United States testifies and provided that a "motion" is made by

25   Defendant. See Fed. R. Crim. P. 16(a)(2) and 26.2. Thus, the A-File associated with Defendant

26   need not be disclosed. The United States will produce documents it intends to use in its case-in-

27   chief. Evidence is material under Brady only if there is a reasonable probability that had it been

28   disclosed to the defense, the result of the proceeding would have been different. See <u>United States</u>

1  v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how

2  documents in the A-File are material. Finally, Defendant does not own the A-File. It is an agency

3  record. Cf. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File

4  documents are admissible as public records).

5      Moreover, the United States will produce a copy of the deportation proceeding that the

6  defendant had before an immigration judge, and was also produce documentation regarding any

7  removals and/or proceedings that the United States intends to introduce at trial.

8      **(4) Brady Material**

9      The Government has and will continue to perform its duty under Brady to disclose material

10  exculpatory information or evidence favorable to Defendant when such evidence is material to

11  guilt or punishment. The Government recognizes that its obligation under Brady covers not only

12  exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on

13  behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States

14  v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not

15  requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10

16  (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable

17  probability that, had the evidence been disclosed to the defense, the result of the proceeding would

18  have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final

19  determination of materiality is based on the "suppressed evidence considered collectively, not item

20  by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

21      Brady does not, however, mandate that the Government open all of its files for discovery.

22  See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the

23  Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence

24  (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the

25  defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995));

26  (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380,

27  389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the

28

1  undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or

2  control over. (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does

3  Brady require the Government "to create exculpatory evidence that does not exist," United States

4  v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply

5  a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d

6  432, 438 (9th Cir. 1976). 1988) ("No [Brady] violation occurs if the evidence is disclosed to the

7  defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand

8  for

9  this information is premature.

10         **(5) Defendant's Prior Record**

11         The United States has already provided Defendant with a copy of any criminal record in

12  accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

13         **(6) Proposed 404(b) and 609 Evidence**

14         Should the United States seek to introduce any similar act evidence pursuant to Federal

15  Rules of Evidence 404(b) or 609(b), the United States will provide Defendant with notice of its

16  proposed use of such evidence and information about such bad act at or before the time the United

17  States' trial memorandum is filed. The United States reserves the right to introduce as prior act

18  evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

19         **(7) Evidence Seized**

20         The United States has complied and will continue to comply with Rule 16(a)(1)© in

21  allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

22  evidence which is within the possession, custody or control of the United States, and which is

23  material to the preparation of Defendant's defense or are intended for use by the United States as

24  evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

25  The United States, however, need not produce rebuttal evidence in advance of trial. United

26  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

27         **(8) Request for Preservation of Evidence**

28  After issuance of a an order from the Court, the United States will preserve all evidence to

1    which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States

2    objects to Defendant's blanket request to preserve all physical evidence. The United States has

3    complied and will continue to comply with Rule 16(a)(1)© in allowing Defendant an opportunity,

4    upon reasonable notice, to examine, copy and inspect physical evidence which is within his

5    possession, custody or control of the United States, and which is material to the preparation of

6    Defendant's defense or are intended for use by the United States as evidence in chief at trial, or

7    were obtained from or belong to Defendant, including photographs. The United States has made

8    the evidence available to Defendant and Defendant's investigators and will comply with any

9    request for inspection.

10    **(9) Tangible Objects**

11    The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

12    allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

13    tangible objects seized that are within its possession, custody, or control, and that are either

14    material to the preparation of Defendant's defense, or are intended for use by the Government as

15    evidence during its case-in-chief at trial, or were obtained from or belong to Defendant. The

16    Government need not, however, produce rebuttal evidence in advance of trial. United States v.

17    Givens, 767 F.2d 574, 584 (9th Cir. 1984).

18    **(10) Expert Witnesses**

19    The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

20    summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

21    of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the

22    expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

23    opinions.

24    **(11) Reports of Scientific Tests or Examinations**

25    The United States is not aware of any scientific tests or examinations at this time but, if

26    any scientific tests or examinations were conducted or are conducted in the future, the United

27    States will provide Defendant with any reports of any such tests or examinations in accordance

28    with Rule 16(a)(1)(F).

**(12) Henthorn Material**

The Government will comply with <u>United States</u> v. <u>Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. <u>United States</u> v. <u>Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002)(citing <u>United States</u> v. <u>Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(13) Evidence of Bias or Motive To Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(14) Impeachment Evidence**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

**(15) Evidence of Criminal Investigation of Any Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." <u>United States</u> v. <u>Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976); <u>United States</u> v. <u>Riley</u>, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. <u>United States</u> v. <u>Rinn</u>, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a defendant with the criminal records of the Government's intended witnesses.") (citing <u>Taylor</u>, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(16) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling. The United States recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection or ability to communicate. The Government objects to providing any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(17) Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will

1    not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©." <u>United States</u> v. <u>Hsin-</u>

2    <u>Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502

3    (D. Del. 1980)). The Government is not required to produce all possible information and evidence

4    regarding any speculative defense claimed by Defendant. <u>Wood</u> v. <u>Bartholomew,</u> 516 U.S. 1, 6-8

5    (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

6    of admissible exculpatory evidence are not subject to disclosure under Brady).

7    **(18) Names of Witnesses Favorable to the Defendant**

8    The Government willl comply with its obligations under Brady and its progeny. At the

9    present time, the Government is not aware of any witnesses who have made an arguably favorable

10    statement concerning the defendant.

11    **(19) Statements Relevant to the Defense**

12    The United States will comply with all of its discovery obligations. However, "the

13    prosecution does not have a constitutional duty to disclose every bit of information that might

14    affect the jury's decision; it need only disclose information favorable to the defense that meets the

15    appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted).

16    **(20) Giglio Information**

17    As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u>

18    v. <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States</u> v. <u>Henthorn</u>, 931 F.2d 29 (9th Cir.

19    1991), and <u>Giglio</u> v. <u>United States</u>, 405 U.S. 150 (1972).

20    **(21) Informants and Cooperating Witnesses**

21    If the Government determines that there is a confidential informant who has information

22    that is "relevant and helpful to the defense of an accused, or is essential to a fair determination of

23    a cause," the Government will either disclose the identity of the informant or submit the

24    informant's identity to the Court for an in-chambers inspection. See <u>Roviaro</u> v. <u>United States</u>, 353

25    U.S. 53, 60- 61 (1957); <u>United States</u> v. <u>Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997).

26    **(22) Evidence of Bias or Motive To Lie**

27    The United States is unaware of any evidence indicating that a prospective witness is

28

biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(23) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(24) Information That May Result in a Lower Sentence Under the Guidelines** – The Government has provided and will continue to provide the defendants with all Brady material that may result in mitigation of the defendants' sentences. Nevertheless, the Government is not required to provide information bearing on the defendants' sentences until after the defendants' convictions or guilty pleas and prior to their sentencing dates. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the the defendants at a time when the disclosure remains in value").

**(25) Residual Request**

The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

1

**III**

2

**DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR FAILURE**

3

**TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE**

4

5

**A. DISMISS INDICTMENT BECAUSE IT FAILS TO ALLEGE ELEMENTS**

6

**1. Failure to Allege Overt Act Was a Substantial Step**

7

Defendant asserts that the indictment "fails to state an offense, since it does not allege

8

that the defendant committed an overt act – a required element in 'attempt' cases." [Def.

9

Motion at 8.] Defendant's motion to dismiss the indictment is based on a Ninth Circuit case

10

that has been overruled by the Supreme Court. [Def. Motion at 9-10 (relying on United States

11

v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005), overruled by -- U.S. --, 127 S.Ct. 782, 166

12

L.Ed.2d 591 (2007).] As such, Defendant's argument is foreclosed by Supreme Court

13

precedent.

14

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "must be a

15

plain, concise, and definite written statement of the essential facts constituting the offense

16

charged." In Resendiz-Ponce, the Supreme Court expressly held that an indictment alleging

17

attempted illegal reentry need not specifically allege a particular overt act or any other

18

component part of the offense. See 127 S.Ct. 782, 787-88 (emphasis added). The Court noted

19

that "[n]ot only does the word 'attempt' as used in the common parlance connote action rather

20

than mere intent, but more importantly, as used in the law for centuries, it encompasses both

21

the overt act and intent elements." Id. at 787. The word "attempt" coupled with the

22

specification of the time and place of the defendant's attempted illegal reentry was sufficient to

23

inform the defendant of the charges against him and to enable ample protection against

24

multiple prosecutions for the same crime. Id. at 788 (applying the logic in Hamling v. United

25

States, 418 U.S. 87, 117-19, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). For these reasons, the

26

Court concluded that the indictment in Resendiz-Ponce complied with Rule 7(c)(1) and did not

27

deprive the defendant of any significant constitutional protections. Resendiz-Ponce, 127 S.Ct.

28

at 788.

1    Defendant also argues that the indictment should be dismissed because it does not

2    allege an overt act that was a "substantial step towards committing the offense." [Def. Motion

3    at 10.] This argument, too, is foreclosed by the Supreme Court's holding in <u>Resendiz-Ponce</u>.

4    The Court held that the words - "took a substantial step" - were implicit in the word "attempt."

5    Id. at 788 n.4. As such, the Court did not believe that adding those four words to the indictment

6    would have given the defendant any greater notice of the charges against him or protection

7    against future prosecution. Id.

8    Similar to the indictment in <u>Resendiz-Ponce</u>, the indictment in this case implicitly

9    alleged that Defendant engaged in the necessary overt act by simply alleging that Defendant

10    "attempted to enter the United States" by crossing the border from Mexico into the United

11    States on or about March 4, 2008. This is sufficient to allege the elements of the offense, and

12    therefore, the indictment was not defective. See id. at 787-88. Adding the words "took a

13    substantial step" would not have given Defendant any greater constitutional protection. See id.

14    at 788 n.4. Thus, Defendant's motion to dismiss the indictment on this ground should be

15    denied.

16    **2. Failure to Set Out Date of Prior Felony Conviction and Prior Removal**

17    Defendant next argues that the Court should dismiss the Indictment for failure to allege

18    both the dates of a previous felony conviction and of a previous removal from the United

19    States, subsequent to that conviction. [Def. Mot. at 11.] This argument also lacks merit.

20    As the Ninth Circuit teaches in its decision in <u>United States</u> v. <u>Salazar-Lopez</u>, 506 F.3d 748 (9th

21    Cir. 2007), "the date of the removal, or at least the fact that [Defendant] had been removed

22    after his conviction" should be alleged in the indictment. Id. at 752. The indictment addressed

23    by the Ninth Circuit in Salazar-Lopez did not have the requisite language, and therefore the

24    Court performed a harmless error analysis. Id. at 752-755. Here, however, the Indictment

25    expressly states: "It is further alleged that defendant ARVIN ESPINOZA-MORALES was

26    removed from the United States subsequent to November 22, 2004." That date correlates with

27    Defendant's prior conviction and is consistent with <u>Salazar-Lopez</u>. As such, the Court should

28    deny Defendant's motion to dismiss.

**IV**

## DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE GRAND JURY INSTRUCTIONS WERE NO FAULTY

It bears noting that the Hon. Barry T. Moskowitz and the Hon. John A. Houston, both recently issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here.  See Order of Judge Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as Appendix 4.  The United States adopts the reasoning in this Court's previous order and requests that the Court reach the same result.  Attached as Appendix 1 is the "Partial Transcript" of the  Grand Jury Proceedings.  Attached as Appendix 2 is a redacted "Supplemental Transcript" which records the relevant portions of the voir dire proceedings.

Other courts of this district, have repeatedly rejected the arguments raised by Defendant before, and we ask the Court to do so again.

**V**

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

The defendant has moved to produce the grand jury transcripts for this case.  In support his motion, the defendant argues that "it appears that the government did not have any immigration documents establishing a deportation 'subsequent to November 22, 2004 at the time it presented the case to the grand jury..."  [Def. Motion at 13.] He further adds a footnote denoting that he has not received any such documentation.  It should first be noted that as discussed above, this case was indicted quite recently.  Moreover, the defendant did not write to request any such document until May 17, 2008, and then filed his motion on May 19, 2008. Appendix 5.  On May 22, 2008, the undersigned Assistant United States Attorney contacted defense counsel, and informed her that the United States was not yet in possession of documentation evidencing a deportation after November 22, 2004, but was in the process of obtaining that documentation.

1  The United States is aware of its obligation in the presentation of evidence before the

2  grand jury, and avers that it has and had sufficient information to support that the defendant

3  was removed subsequent to November 22, 2004 when the case was indicted.  Moreover, the

4  defendant's basis for his motion, is inadequate to support the disclosure of the grand jury

5  transcript.  For these reasons, the defendant's motion should be denied.

6  **VI**

7  **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

8  Defendant moves this Court for an order suppressing any statements because they were

9  allegedly made as a result of an invalid waiver of his rights pursuant to Miranda v. Arizona,

10  384 U.S. 436 (1966). Defendant specifically asks for a suppression hearing to determine the

11  admissibility of statements made by the defendant on March 4, 2008 at what the defendant

12  described as "an undetermined time"[2] at approximately 11:10 pm and on April 1, 2008 at

13  approximately 6:35 pm.  As explained further below, the United States does not believe that a

14  suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold

15  an evidentiary hearing on Defendant's motion, the United States will prove that Defendant's

16  statements while he was in the field were voluntary, Defendant was not subject to custodial

17  interrogation, and the statements are, therefore, admissible.  As to the statements that the

18  defendant made while he was in custody, they were made after he was properly advised of his

19  Miranda rights and he agreed to waive those rights.  Moreover, any evidence derived from

20  Defendant's statements should not be suppressed because the evidence was properly obtained

21  without any due process violation.

22  **1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

23  This Court can and should deny Defendant's motion without a suppression hearing.

24  Under Ninth Circuit and Southern District precedent, as well as Southern District Local

25  Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to

27  [2]    While it is unclear about which statement the defendant is referring, the United
28  States is assuming that the defendant refers to the defendant's field admissions
made on March 4, 2008 at approximately 8:20 pm.

17    Criminal Case No. 08CR1271-IEG

1    suppress only when the defendant adduces specific facts sufficient to require the granting of

2    the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989)

3    ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the

4    government's proffer. In these circumstances, the district court was not required to hold an

5    evidentiary hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant

6    forfeited right to evidentiary hearing on motion to suppress by not properly submitting

7    declaration pursuant to similar local rule in Central District of California; United States v.

8    Moran- Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion

9    containing indefinite and unsworn allegations was insufficient to require evidentiary hearing

10   on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal

11   motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court

12   need not grant an evidentiary hearing where either party fails to properly support its motion for

13   opposition.").

14        Here, Defendant has failed to support his allegations with a declaration, in clear

15   violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to

16   establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in

17   this case. Cf. United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary

18   hearing on a motion to suppress need be held only when the moving papers allege facts with

19   sufficient definiteness, clarity, and specificity to enable the trial court to conclude that

20   contested issues of fact exist." (citation omitted).  Defendant's motion to suppress statements

21   should be denied.

22        **2. Defendant Was Not In Custody When He Made Field Admissions**

23        When a person has been deprived of his or her freedom of action in a significant way,

24   Government agents must administer Miranda warnings prior to questioning the person.

25   Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement thus has two components: (1)

26   custody, and (2) interrogation. Id. at 477-78. Whether a person is in custody is measured by an

27   objective standard. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). A court must examine the

28   totality of circumstances and determine "whether a reasonable innocent person in such

1    circumstances would conclude that after brief questioning he or she would not be free to

2    leave." United States v. Booth, 669 F.3d 1231, 1235 (9th Cir. 1981); see also United States v.

3    Beraun-Perez, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1)

4    the language used to summon the individual; 2) the extent to which the defendant is confronted

5    with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the

6    detention; and 5) the degree of pressure applied to detain the individual." Id. (citation omitted).

7            The Supreme Court held that in the "general interest of effective crime prevention and

8    detection...a police officer may in appropriate circumstances and in an appropriate manner

9    approach a person for purposes of investigating possible criminal behavior even though there is

10   no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968). This authorized

11   investigatory detention or stop falls short of custody when a Border Patrol agent does not have

12   enough information to execute an arrest, and must investigate further through brief, routine

13   questioning about citizenship and immigration status. See United States v. Brignoni-Ponce,

14   422 U.S. 873, 878-88 (1975); United States v. Galindo-Gallegos, 244 F.3d 728, 731-32 (9th

15   Cir.), modified by 255 F.3d 1154 (9th Cir. 2001).

16           The case of Florida v. Royer, 460 U.S. 491 (1983), is instructive. In Royer, two police

17   detectives at the Miami International Airport were observing Royer and thought he fit a "drug

18   courier profile." As Royer walked over to the airline boarding area, the two detectives

19   approached him, identified themselves as police officers, and asked if Royer had a "moment"

20   to speak with time. Royer said, "Yes." Id. at 493-494. Upon request, Royer produced his

21   airline ticket and his driver's license. When asked why the ticket was in the name of "Holt,"

22   instead of the name "Royer," as on his license, Royer said a friend had made the reservation in

23   the other name. Royer was noticeably more nervous during this conversation, whereupon the

24   detectives told him they were narcotics investigators and that they suspected him of

25   transporting narcotics. Id. at 494. The detectives then asked Royer to accompany them to a

26   room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with

27   them. Id.

28           In deciding the case, the Supreme Court noted:

1

2

3

4

5

6

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. (Citations omitted). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. (Citation omitted).

7   Id. at 497-98 (citations omitted).

8          Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and

9   Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer

10  approached and questioned a worker in a field after a number of other workers had fled upon

11  seeing the Border Patrol. The Ninth Circuit found that no seizure had taken place in regard to

12  the initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the

13  record, it does not appear that the Border Patrol officer's initial encounter with petitioner

14  amounted to a seizure under the Anderson test. The officer approached the petitioner in an

15  open field and asked him several questions to which he responded voluntarily. There is no

16  evidence of the use of physical force, a display of a weapon, or the threatening presence of

17  several officers." Id. at 1311.

18         Detaining a person for routine border questioning is not custodial. United States v.

19  Troise, 796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244

20  F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld

21  Judge Gonzalez's denial of a defendant's motion to suppress his field statements). In Galindo-

22  Gallegos, patrol agents apprehended the defendant and others running near the Mexican

23  border. Once they had the 15 or 20 people seated, an agent asked them what country they were

24  from and whether they had a legal right to be in the United States. Id. The defendant said that

25  he was from Mexico and had no such right. Id. The order Patrol agents did not advise the

26  group of their Miranda rights prior to this questioning. Id. After the defendant admitted that he

27  was an alien illegally in the United States, he and the others were handcuffed and put into one

28

1   of the vehicles. Id. The Ninth Circuit affirmed the district court's decision not to suppress the

2   defendant's field statements. Id.

3   This case is analogous to <u>Royer</u>, <u>Benitez-Mendez</u>, and <u>Galindo-Gallegos</u>. Here, a

4   Border Patrol agents responded to information that a person had climbed over the international

5   boundary fence in an agricultural field area.  There, he found the defendant, and identified

6   himself as a Border Patrol agent. The agent then conducted a field interview of the defendant,

7   Arvin Espinoza-Morales, as to his citizenship and right to be in the United States. Defendant

8   responded that he was a citizen of Mexico with no legal right to be in the United States. See

9   <u>Pennsylvania</u> v. <u>Muniz</u>, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited

10  prior to Miranda warnings during procedures "necessarily attendant to the police procedure

11  [are] held by the

12  court to be legitimate" and admissible).

13  Defendant's field admissions were made during a brief investigatory stop. See, e.g.,

14  <u>United States</u> v. <u>Brignoni-Ponce</u>, 422 U.S. 873, 878-89 (1975) (noting that it is well

15  established that law enforcement may make a brief investigatory stop and ask questions about

16  citizenship and immigration status); <u>United States</u> v. <u>Woods</u>, 720 F.2d 1022, 1029 (9th Cir.

17  1983) (holding that persons subjected to brief investigatory detentions are not entitled to

18  Miranda warnings). Defendant answered those questions voluntarily. The record is devoid of

19  any suggestion that the agents physically restrained Defendant or restricted his liberty in any

20  meaningful way. Further, the fact that officers were armed or displayed badges does not turn a

21  consensual encounter into a custodial situation. See <u>United States</u> v. <u>Drayton</u>, 536 U.S. 194,

22  204-205 (2002). During this questioning, Defendant was not placed in handcuffs or searched.

23  There is simply nothing to suggest that Defendant was in custody during his field interview

24  and his statements to officers in the field are admissible at trial.  For all of the foregoing

25  reasons, the Court should deny Defendant's motion to suppress all statements.

26  **3.    Defendant's Post Miranda Statement were Voluntary**

27  A statement made in response to custodial interrogation is admissible under <u>Miranda v.</u>

28  <u>Arizona</u>, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows

1    that the statement was made after an advisement of Miranda rights, and that the statement was

2    not elicited by improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986)

3    (preponderance of evidence standard governs voluntariness and Miranda determinations; valid

4    waiver of Miranda rights should not be found in the "absence of police overreaching").

5         A valid Miranda waiver depends on the totality of the circumstances, including  the

6    background, experience, and conduct of the  defendant.  North Carolina v. Butler, 441 U.S.

7    369, 374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a

8    full awareness of both the nature of the right being abandoned and the consequences of the

9    decision to abandon it."  Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears

10   the burden of establishing the existence of  a valid Miranda waiver.  North Carolina v. Butler,

11   441 U.S. at 373.  In assessing the validity of a defendant's Miranda waiver, the court should

12   analyze the totality of the circumstances surrounding the interrogation.  See Moran v. Burbine,

13   475 U.S. at 421.   Factors commonly considered include: (1) the defendant's age (see United

14   States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc)) (valid waiver because the 17-

15   year old defendant did not have trouble understanding questions, gave coherent answers, and

16   did not ask officers to notify parents); (2) the defendant's familiarity with the criminal justice

17   system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in

18   part because defendant was familiar with the criminal justice system from past encounters); (3)

19   the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4

20   (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United

21   States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were

22   read to defendant twice and defendant signed a written waiver)); and (4) the time lapse

23   between the reading of the Miranda warnings and the interrogation or confession (see Guam v.

24   Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)) (valid waiver despite 15-hour delay between

25   Miranda warnings and interview).

26        In this case, Defendant's post-arrest confessions should not be suppressed because they

27   were preceded by a knowing, voluntary, and intelligent Miranda waiver.  Agents advised

28   Defendant of his Miranda rights in Spanish.  Defendant knowingly waived his Miranda rights

1   and agreed to answer questions without the presence of an attorney.  Defendant is familiar with

2   the criminal justice system as a result of his prior arrests and convictions.  He verbally stated

3   that he understood his rights and was willing to be interviewed without an attorney present and

4   he signed a waiver of rights expressing her decision to speak with agents.  Defendant's post-

5   <u>Miranda</u> interview immediately followed his waiver of rights. This entire exchange was

6   videotaped for the April 1, 2008, and was only not videotaped on March 4, 2008 because at the

7   time, the defendant was to be administratively processed and returned back to Nicaragua and

8   not criminally prosecuted.  There is no allegation or evidence of any physical or psychological

9   coercion by any Government agents.  Based on the totality of the circumstances, Defendant's

10  statements were the product of a knowing, intelligent, voluntary waiver of his <u>Miranda</u> rights

11  and therefore should not be suppressed.

12          **4.      Defendant's April 1, 2008 Statements Should Not be Suppressed**

13          Defendant argues that the statements that he made on April 1, 2008 following a proper

14  advisal of his <u>Miranda</u> rights and a waiver of those rights should be suppressed because they

15  occurred outside of the safe harbor period and he was not arraigned without unnecessary delay.

16  In support of his position, the defendant cites the requirements set forth in Federal Criminal

17  Procedure Rule 5.

18          However, the requirements set forth in Rule 5 apply to defendants who have been

19  arrested and are prosecuted criminally.  In addition, several circuits have held that Rule 5 only

20  applies to aliens held in civil detention when there is evidence of collusion between

21  immigration and prosecution authorities. <u>United States</u> v.<u>Garcia-Echevarria</u>, 374 F.3d 440, 451

22  (6th Cir. 2004); <u>United States</u> v. <u>Perez-Perez,</u> 337 F.3d 990 (8th Cir.), *cert denied*, 540 U.S. 927

23  (2003); United <u>States</u> v. <u>Encarnacion</u>, 239 F.3d 395 (1st Cir.), *cert denied*, 532 U.S. 1073

24  (2001); <u>United States</u> v. <u>Noel</u>, 231 F.3d 833 (11th Cir. 2000).

25          While the defendant was taken into custody on March 4, 2008, as discussed above, the

26  defendant was initially administratively processed for reinstatement of his prior removal order

27  and removal back to Nicaragua, and was held in civil detention until that could be

28  accomplished.  As such, there was no violation of the requirements set forth by Rule 5 because

1    the defendant was not actually arrested for a violation of 8 United States Code, section 1326,

2    until April 1, 2008.  It was after being arrested on April 1, 2008, that the defendant was

3    advised of his <u>Miranda</u> rights and he agreed to waive those rights and make statements.  After

4    being arrested and being criminally prosecuted for the offense, the defendant was promptly

5    arraigned in that he was arraigned on the next business day, April 2, 2008.

6    The defendant has thus far not controverted these facts.  Moreover, the defendant has

7    failed to make any allegations in support of a contention that collusion existed between

8    immigration and criminal prosecution authorities.  As such, no basis exists for the defendant's

9    motion to be granted.  For these reasons, the defendant's motion should be denied.

10   **VII**

11   **<u>MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS</u>**

12   The Government does not object to the granting of leave to file further motions as long

13   as the further motions are based on newly discovered evidence or discovery provided by the

14   Government subsequent to the instant motion at issue.

15   **VIII**

16   **<u>CONCLUSION</u>**

17   For the foregoing reasons, the Government requests that the Court deny Defendant's

18   motions, except where unopposed.

19

20        DATED: May 26, 2008

21                                          Respectfully submitted,

22                                          KAREN P. HEWITT
                                            United States Attorney

23                                          /s/ *Caroline P. Han*
                                            CAROLINE P. HAN
24                                          Assistant United States Attorney
                                            Attorneys for Plaintiff
25                                          United States of America

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1271-IEG |
| Plaintiff, | ) ) | |
| v. | ) ) | CERTIFICATE OF SERVICE |
| ARVIN ESPINOZA-MORALES | ) ) | |
| Defendant. | ) ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

     I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL DISCOVERY, DISMISS THE INDICTMENT, TO SUPPRESS STATEMENTS, AND FOR LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     **Candis Mitchell**
     Federal Defenders of San Diego
     225 Broadway Suite 900
     San Diego, CA 92101-5008
     (619)234-8467
     Email: Candis_Mitchell@fd.org
     *Attorney for defendant*

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on May 26, 2008

          /s/ *Caroline P. Han*
          CAROLINE P. HAN