**CANDIS MITCHELL**
California Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
(619) 234-8467 (tel); (619) 687-2666 (fax)
Candis_Mitchell@fd.org

Attorneys for Mr. Arvin Espinoza-Morales

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 08CR1271-IEG |
| Plaintiff, | |
| v. | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS *IN LIMINE* |
| **ARVIN ESPINOZA-MORALES,** | |
| Defendant. | |

**I.**

**INTRODUCTION**

Mr. Espinoza-Morales is charged by indictment with being a deported alien found in the United States in violation of 8 U.S.C. §1326. This motion incorporates the facts included in the motions that Mr. Espinoza-Morales previously filed.

**II.**

**THE COURT SHOULD EXCLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED IN DISCOVERY, AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE NOTICE REQUIREMENTS OF RULE 16 (d)(2)**

Pursuant to Rule 16(d)(2), Mr. Espinoza-Morales requests that the Court prohibit the introduction of any documents not yet produced in discovery. Additionally, pursuant to Federal Rule of Criminal Procedure 16 (d)(2), Mr. Espinoza-Morales requests that the Court order the Government to provide him with

prompt written notice of its intention to use any discoverable evidence in its case-in-chief.

## III.

### THE COURT SHOULD EXCLUDE DOCUMENTS ABSENT REDACTION

The Government has yet to comply with Fed. R. Crim. P. 12(b)(4)'s notice requirement. Mr. Espinoza-Morales anticipates that the Government will nonetheless attempt to introduce several documents from an A-file maintained by the Department of Homeland Security. If the Court is inclined to admit such documents, Mr. Espinoza-Morales requests that the Court order the Government to redact certain portions of the documents such as: (1) any mention that Mr. Espinoza-Morales was previously convicted of any crime, including the listing of his address as any penal institution. See Fed. R. Evid. 403 and 404(b); (2) any reference to Mr. Espinoza-Morales using an alias, or any mention that Mr. Espinoza-Morales has used an alias. See Fed. R. Evid. 403; and (3) any reference to Mr. Espinoza-Morales as an "alien," because that is an issue for the jury to decide.

## IV.

### THIS COURT SHOULD PRECLUDE TESTIMONY FROM GOVERNMENT WITNESSES REFERRING TO MR. ESPINOZA-MORALES AS "THE ALIEN"

To convict Mr. Espinoza-Morales, the Government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that will be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); Fed. R. Evid. 704(a). It is also a finding that the jury must make, and thus, no witness is permitted to opine that this element has been proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a legal conclusion).

The Government will call several witnesses from the Immigration and Naturalization Service (INS), particularly the Government will call the A-file custodian, border patrol agents, and detention enforcement officers. Because the INS has accused Mr. Espinoza-Morales of being an alien, it is anticipated that these witnesses will refer to Mr. Espinoza-Morales as "the alien." If these witnesses testify that Mr. Espinoza-Morales is an alien, it will create confusion among the jurors regarding This Court's instructions on the law and what the Government has (or has not) proved, in violation of Fed. R. Evid. 403. It will also subvert Mr. Espinoza-Morales right to a jury finding of every essential element guaranteed by the Fifth and Sixth

Amendments. Thus, this Court should preclude the witnesses from referring to Mr. Espinoza-Morales as "the alien."

## V.

## THIS COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE INSPECTION OR PRODUCTION OF CERTIFIED DOCUMENTS

While Mr. Espinoza-Morales objects to the introduction of any A-File documents, it is clear that no public record can be introduced unless certified. The defense has yet to receive copies of any alleged certifications. Typically these simply appear in the middle of trial. Defense counsel requests an opportunity to inspect any alleged certifications pre-trial so that any issues can be dealt with accordingly. The defense is happy to permit Government inspection of its certified documents pre-trial.

## VI.

## THIS COURT SHOULD PRECLUDE THE INTRODUCTION OF "MUG SHOTS" OF MR. ESPINOZA-MORALES

Discovery documents provided in this case include some "mug shot"-style pictures of Mr. Espinoza-Morales taken while he was in custody. Because this is not an identity case, these pictures have no place at this trial. Mr. Espinoza-Morales does not dispute that he is the individual arrested in the instant case. Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically places Mr. Espinoza-Morales as a criminal in mind of the jury, and is not unlike forcing a defendant to wear jail-issued clothing while in trial. Under FED. R. EVID. 403, these pictures are highly prejudicial and devoid of probative value. They should be excluded from trial as a result.

## VII.

## THIS COURT SHOULD PROHIBIT THE CERTIFICATE OF NONEXISTENCE OF RECORD AS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE UNITED STATES' CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT ITS DISCOVERY OBLIGATIONS

The government may seek to produce and introduce a Certificate of Nonexistence of Record (hereinafter "CNER") when it is received. Mr. Espinoza-Morales is expecting the government will try and introduce this record. The Government may attempt to establish that Mr. Espinoza-Morales did not obtain permission for admission into the United States by offering the CNER. This document is inadmissible

because it violates the Confrontation Clause and because it is an attempt to circumvent the government's discovery obligations.

The use of a CNER violates Mr. Espinoza-Morales's Sixth Amendment Confrontation Clause right, which "guarantees an opportunity for effective cross-examination . . . ." United States v. Lo, 231 F.3d 471 (9th Cir. 2000) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). "Evidence may be admissible under an exception to the hearsay rule and still violate the Confrontation Clause." United States v. Neff, 615 F.2d 1235, 1241 (9th Cir. 1980). The admission of a CNR deprives Mr. Espinoza-Morales of the opportunity to cross-examine the declarant on the competency of his or her investigation. This cross-examination is crucial, as the Government will likely rely entirely on this document to establish that particular element of the offense.

Again, the Supreme Court's decision in Crawford v. Washington, squarely held, pursuant to the Sixth Amendment, that pre-trial, testimonial statements may not be admitted against a defendant at trial where the defendant has not had a chance to cross examine the declarant. Crawford, 124 S. Ct. at 1374. The reasoning outlined in Section II, C above pertains to the CNER as well.

The government may attempt to rely on United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000), which affirmed district court's admission of a CNER, addressing hearsay and authentication issues but not Confrontation Clause violation. But the Ninth Circuit specifically did not reach the Confrontation Clause issue in Mateo-Mendez as it had not been briefed or argued. Mateo-Mendez, 215 F.3d at 1043. The government may also attempt to rely on United States v. Loyola-Dominguez, in arguing for the admission of the CNER. 125 F.3d 1315, 1317 (9th Cir. 1997). The validity of this pre-Crawford Ninth Circuit precedent regarding CNERs is clearly in question.

Finally, the failure to have this witness testify at trial and allow the admission of the CNER is an attempt by the Government to circumvent its discovery obligations under Brady, Giglio and the Jenks Act. See Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. U.S., 405 U.S. 150 (1972), 18 U.S.C.§ 3500 *et seq*. If the declarant were to appear at trial to testify, Mr. Espinoza-Morales would undoubtedly be entitled to discovery material, including impeachment evidence against that declarant and her own prior statements and certain other documents (in addition to being entitled to exercise the right of cross-examination).[1] If the Court

---

[1] Additionally, it is unknown if the witness conducted the search of the records herself or delegated that job to the individual who actually signed the document.

does allow the admission of the CNER, Mr. Espinoza-Morales requests production of any and all discoverable material to which he would be entitled were this witness to testify at trial.

### VIII.
### THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609.

**A.    Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the government evidential hypothesis is insufficient, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

**B.    Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to only those offenses for which the court determines that the probative value outweighs its prejudicial effect to the accused. The government should be precluded from introducing any evidence of the prior conviction because it is irrelevant under Federal Rule of Evidence 401, and prejudicial under Federal Rule of Evidence 403. Any prior offense does not make the existence of any fact that is of consequence more or less probable, nor has any relevance to any element of the present charge against Mr. Espinoza-Morales. Even if Mr. Espinoza-Morales were to testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of his prior offense. Fed. R. Ev. 401, 403, 609.

To the extent that this Court rules that Mr. Espinoza-Morales's alleged prior conviction is admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Espinoza-Morales was convicted. Such information would be more prejudicial than probative of Mr. Espinoza-Morales's guilt of the charged offense.

///

## IX.

## **THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE**

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Espinoza-Morales right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

## X.

## **THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS**

The Court should order production of grand jury transcripts if a witness who likely will testify at the trial of Mr. Espinoza-Morales also is likely to have testified before the grand jury. Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule of Criminal Procedure 26.2(d).

## XI.

## **THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM USING DOCUMENTS OF DEPORTATION AS EVIDENCE OF ALIENAGE**

**A.   The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation, *Not* Alienage**

Mr. Espinoza-Morales expects that the government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his alleged deportation. These two documents are admissible *only* to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Espinoza-Morales's alleged alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put

> it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Espinoza-Morales to be an alien after an administrative hearing, and that Mr. Espinoza-Morales may have been removed from the United States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of Evidence 401 to establish the fact of alienage.[2]

Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because their probative value is substantially outweighed by their prejudicial effect. Both the order of deportation and warrant of deportation make reference to an "alien;" even more troubling, in the context of these documents, the term "alien" is associated *with* Mr. Espinoza-Morales, who presumably is the "alien" to which the documents refer. In the face of these quasi-official government documents proclaiming Mr. Martinez to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as an open question that the government must prove beyond a reasonable doubt.

---

[2] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

1    Should the Court nonetheless admit these documents, Mr. Espinoza-Morales requests that this Court
2 instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of
3 deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and
4 that these documents do not, in and of themselves, establish the fact of alienage.  Mr. Espinoza-Morales
5 further requests that this Court redact these documents to exclude any reference to his alleged alienage.

6 **B.     None of the Other A-File Documents Are Admissible By the Government Under Any Rule of Evidence.**
7

8    Mr. Espinoza-Morales anticipates that the government may seek to admit other documents from the
9 A-file, including the notice to appear/order to show cause why a person should not be deported and warnings
10 regarding the possible penalties for reentry.  None of these documents from the A-file are admissible by the
11 government to establish any matter at issue in this trial.  All documents from the A-file—except the warrant
12 of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of
13 Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of
14 Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

15        **1.     The Notice to Appear Is Inadmissible.**

16    The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8).  The
17 Notice to Appear is a document that provides an alien with *notice* of the grounds for removal.  It does not
18 record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides
19 an objective observation that a person committed a crime.  This document is nothing more than an *accusation*
20 that the government must prove in an immigration proceeding.

21        **2.     The Warnings of Possible Penalties Is Inadmissible.**

22    Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401,
23 403, and 803(8).  The warning of possible penalties contains boilerplate statements (drafted by the former
24 INS) regarding the penal consequences to an alien who illegally reenters the country.  It has no bearing on
25 whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This
26 document contains inadmissible hearsay, and is completely irrelevant.  It is also more prejudicial than
27 probative.  Among other things, given the serious consequences listed on the warning of possible penalties,
28 jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry;

needless to say, such speculation is completely irrelevant to the charge at hand and could be severely prejudicial. Accordingly, the warnings of possible penalties also must be excluded at trial.

      **3.** **If this Court Finds That These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage; Thus, This Court Should Provide the Jury With a Limiting Instruction.**

To the extent that this Court finds any A-file document relevant to some point, the document is not admissible to establish Mr. Espinoza-Morales's alienage. Accordingly, this Court should redact these documents to exclude all references to alienage. Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C.** **This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Espinoza-Morales's Constitutional Rights.**

Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage to protect Mr. Espinoza-Morales's rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments. Because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of proving alienage in such a proceeding based upon otherwise inadmissible hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988). Similarly, because a criminal defendant such as Mr. Espinoza-Morales never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

Additionally, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight

or conclusive effect.  Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation").  The government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval.  The admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential element.

In sum, because the A-file documents are generated by the government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution.  This Court should exclude these documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove some other fact, it should redact these documents to exclude reference to Mr. Espinoza-Morales's alienage and instruct the jury as to the documents' limited relevance.

## XII.

### REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

As new information surfaces due to the Government providing discovery in response to these motions, those previously filed, or an order of this Court, the defense may need to file further motions. Therefore, defense counsel requests the opportunity to file further motions.

## XIII.

### CONCLUSION

For the foregoing reasons, Mr. Espinoza-Morales respectfully requests that this Court grant the above requested motions.

Respectfully submitted,

Dated: August 27, 2008

*s/ Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Espinoza-Morales
Candis_Mitchell@fd.org